UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| GARY WAYNE LANKFORD,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br><br>  Defendant. | Case No.: 1:12-cv-01517-NJV<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE WITH DIRECTIONS**<br><br>Re: Dkt. Nos.  14, 17 |

## INTRODUCTION

Plaintiff Gary Wayne Lankford seeks judicial review of a November 23, 2010 administrative law judge ("ALJ") decision denying his application for Social Security disability benefits.  Doc. No. 17.  Lankford's request for review of the ALJ decision was denied by the Appeals Council on March 7, 2012.  AR 1-4.  The ALJ decision thus is the "final decision" of the Commissioner of Social Security, which this court may review pursuant to 42 U.S.C. § 405(g). *See Bass v. Soc. Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1988).  Both parties have consented to the jurisdiction of a magistrate judge.  Doc. Nos. 4 & 5.  The parties have filed cross-motions for summary judgment.  The court therefore may review the Commissioner's decision and decide the parties' cross-motions for summary judgment.

## LEGAL STANDARD

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

**A.      The ALJ's Use of the Five-Step Sequential Evaluation for Determining Disability.**

A person filing a claim for social security disability benefits ("the claimant") bears the burden of proving his disability. 20 C.F.R. § 404.1512(a). The claimant must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *Id*. § 404.1505. The ALJ must consider all evidence in the claimant's case record to determine disability (20 C.F.R. § 404.1520(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (20 C.F.R. § 404.1520). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Lankford's application for benefits under the required five-step sequential evaluation. *See* Administrative Record ("AR") 16-23.

At Step One, the claimant bears the burden of showing he has not been engaged in a "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 404.1520(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. Lankford claimed he was disabled starting February 22, 2005. AR 18. The ALJ found that Lankford had not engaged in substantial gainful activity since that date. AR 18.

At Step Two, the claimant bears the burden of showing that he has a medically severe

impairment or combination of impairments. 20 C.F.R. § 404.1520(c). A "severe" impairment is one defined as significantly limiting physical or mental ability to do basic work activity. *Id*. The ALJ found that Lankford had two severe impairments: degenerative disc disease of the lumbar spine and a depressive disorder secondary to a medical condition. AR 18.

      At Step Three, the ALJ compares the claimant's impairments to a listing of impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1520(d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 18. The ALJ's analysis at this step, however, was limited strictly to Lankford's mental impairment. AR 18-19. Despite identifying Lankford's degenerative disc disease of the lumbar spine as a severe impairment in Step Two, the ALJ never analyzed whether this physical impairment met equaled one of the listed impairments. The ALJ also never analyzed whether Lankford's combination of impairments equaled one of the listed impairments.

      At Step Four, the claimant bears the burden of showing he does not have sufficient RFC to perform past relevant work due to his impairments and/or limitations. 20 C.F.R. § 404.1520(e). In analyzing Lankford's RFC, the ALJ took into account both Lankford's mental and physical impairments. AR 19-21. The ALJ observed that while Lankford had diagnostic studies revealing a "moderate" physical impairment, "there is no indication from any treating source that he is completely disabled from all work activities." AR 20. The ALJ found that Lankford's pelvic pain was "without support;" his back pain was "controlled" with medication[1]; he was able to travel significant distances and engage in daily activities not inconsistent with a modified range of light work activities; and he had not sought treatment for his mental impairment. AR 20-21. The ALJ found that Lankford had sufficient RFC to perform light work with some restrictions. AR

---

[1] As noted further below, Lankford was taking Vicodin up to four times per day, as well as additional painkillers. *See* AR 337. His pain was sufficiently severe that his physician considered prescribing methadone. AR 281.

19-20. The ALJ rejected Lankford's pain testimony to the extent it was inconsistent with the ALJ's RFC assessment. AR 19-20. Because Lankford's past relevant employment as a machine operator, a forklift operator and a shipping and receiving clerk was performed at levels above the light exertional level, the ALJ found that Lankford was unable to perform past relevant work. AR 21.

At Step Five, the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f). In Lankford's case, the ALJ credited the testimony of a vocational expert who testified that Lankford was able to work as a general assembler, small product assembler, or non-construction laborer, as well as perform many other jobs in several categories. AR 22. Because these jobs were found in sufficient numbers in the national economy, the ALJ found Lankford was not disabled. *Id*.

**B.     The ALJ committed legal error by failing to assess whether Lankford's physical impairment met or equaled a listed impairment.**

Lankford applied for disability benefits because his degenerative disc disease and accompanying pain prevented him from working. AR 165, 189, 225, 230. After the hearing with the ALJ, but before the ALJ issued his decision, Lankford's attorney suggested that Lankford met the listing at 1.04A: Disorders of the spine. *See* AR 230. In his November 23, 2010 decision, the ALJ concluded at Step Two that Lankford's degenerative disc disease was a severe impairment, but failed to assess at Step Three whether the condition (alone or in combination with other impairments) met or equaled a listing. *See* AR 18-19.

Defendant contends that the court should affirm the ALJ decision because it was "reasonable for the ALJ to find that Plaintiff failed to meet his burden of showing he meets or equals any listing of impairment." Doc. No. 17 at 3. Defendant argues that the ALJ was not required to state why Lankford "failed to satisfy every different section of the listing of impairments," and implies that because the ALJ "specifically found" that Lankford did not have an impairment or combination of impairments that met or equaled the listed impairments, the ALJ

4

had adequately addressed Lankford's physical impairment. *See* Doc. No. 17 at 4. Defendant's argument fails because the ALJ did not come to any conclusion as to Lankford's physical impairment at Step Three: the ALJ never assessed whether Lankford's degenerative disc disease meets or equals Listing 1.04A. The ALJ did not analyze the seven components of Listing 1.04A: he did not discuss evidence of nerve root compression, neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, accompanying sensory or reflex loss or positive straight-leg raising tests. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04A. Without evaluating the relevant evidence, the ALJ could not conclude whether Lankford met or equaled Listing 1.04A. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (the ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment"); *cf. Branch v. Astrue*, 2008 U.S. Dist. LEXIS 63155, at *9 (N.D. Cal. Aug. 4, 2008) (where the ALJ had "merely listed the criteria under Listing 1.04(A) and made a cursory finding that plaintiff does not meet each element of the listing," the court directed the ALJ on remand to "discuss whether plaintiff's evidence is sufficient to show that he meets Listing 1.04(A))"). Because the ALJ did not analyze Lankford's physical impairment, this court cannot review the ALJ's conclusion on this issue, much less determine whether that conclusion was supported by substantial evidence. *See, e.g.*, *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981).

The court cannot infer non-existent reasoning and/or analysis into the ALJ's decision. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Sec.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis")); *see also Mangana v. Comm'r of Social Sec.*, 2012 U.S. Dist. LEXIS 44059, at *8-*9 (N.D. Cal. March 29, 2012) (rejecting Commissioner's invitation to make an independent determination as to

5

claimant's transferrable skills on appeal and remanding to allow ALJ to make determination).  It was the ALJ's duty to analyze the evidence in the record and determine whether Lankford met or equaled a listing.  The ALJ failed to do so.

While the ALJ did examine some evidence pertaining to Lankford's physical impairment when assessing his residual functional capacity ("RFC") (*see* AR 20), this analysis does not excuse the ALJ from analyzing whether the impairment meets or equals a listed impairment.[2]  If the ALJ had found that Lankford met or equaled a listed impairment at Step Three, Lankford would have been presumed disabled at that point.  20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  The ALJ would not have proceeded to assess Lankford's RFC.  Because the ALJ erred in Step Three of the evaluation process, he could not adequately consider Lankford's impairments or combination of impairments.  The court thus concludes that the ALJ's error was not harmless.

Lankford requests reversal of his denial of benefits and a finding of disability without resorting to remand.  Doc. No. 14.  Although Lankford directs the court to evidence supporting the existence of several of the components of Listing 1.04A[3], he does not establish on this motion that there is sufficient evidence of all the elements required by that listing.  The court cannot evaluate whether he meets or equals Listing 1.04A and therefore remands the case to the ALJ for further proceedings consistent with this opinion.

In support of his motion for summary judgment, Lankford submitted to this court an MRI dated August 25, 2011.  Doc. No. 14, Ex. 1.  He had not submitted this MRI to the ALJ, but had submitted it to the Appeals Council.  As such, it is part of the AR.[4]  *See Brewes v. Comm'r of Soc.*

---

[2] When discussing Lankford's RFC, the ALJ focused almost exclusively on Lankford's allegations of pain.  AR 20.  Although the ALJ referenced reports by Lankford's treater and a consultative examiner, both of which addressed Lankford's underlying physical issues, the ALJ did not use any of the information to analyze whether Lankford meets Listing 1.04A.  AR 20-21.

[3] Lankford directs the court to evidence supporting the existence of several of these seven components.  Doc. No. 18 at 3-5 (reflex loss is demonstrated by AR 251, 280; motor loss (as muscle weakness) is demonstrated by AR 250; straight leg raising test is supported by AR 280).  Lankford acknowledges that there is no evidence as to whether the straight-leg was both sitting and supine, which is a required element of Listing 1.04A.  Doc. No. 18 at 3.

[4] The copy of the AR that Defendant provided to the court does not include certain documents that Lankford submitted to the Appeals Council, including the August 25, 2011 MRI.  Lankford

United States District Court
Northern District of California

*Sec.*, 682 F.3d 1157, 1164 (9th Cir. 2012). Lankford need not meet the good cause standard of section 405(g) to have the ALJ consider the evidence on remand. The court cannot determine whether the MRI documents a new impairment or illustrates the existence of a progressive condition that was in existence when the ALJ issued his decision; that determination must be made by the ALJ.

**C.     If on remand the ALJ concludes that Lankford's impairment does not meet or equal a listed impairment, he must correctly assess Lankford's credibility when assessing Lankford's RFC.**

The ALJ found that Lankford's impairments could reasonably be expected to produce pain and other alleged symptoms, but he rejected Lankford's testimony "concerning the intensity, persistence and limiting effects of these symptoms . . . to the extent they are inconsistent" with the RFC assessment. AR 20. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must first find whether the claimant's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the condition could reasonably be expected to produce the pain or other symptoms alleged, the ALJ can reject the claimant's testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Having found that Lankford's condition could reasonably be expected to produce the pain and symptoms alleged, the ALJ was required to provide clear and convincing reasons for discrediting Lankford's subjective complaints. The ALJ did not meet this standard.

First, although the ALJ referenced evidence in the record to support his credibility assessment, he did not address all the significant probative evidence in the record. For example, the ALJ stated that x-rays showed that Lankford's lumbar disc degeneration was "moderate" (AR 20, citing AR 259), but did not acknowledge that two other physicians characterized the

---

provides a receipt as proof that he submitted the documents to the Appeals Council. Doc. No. 14 at 15-23. Defendant addresses the merits of the new documents, but fails to explain why the documents were omitted from the AR. *See* Doc. No. 17. On remand, Defendant shall ensure that the full AR is provided to the ALJ.

degeneration as "severe." *See* AR 281 (treating physician reviewed MRI and found "severe abnormalities" at L5-S1 and bulge of 4 mm in 2005), AR 301 (different physician reviewed MRI in July 2005, found "severe abnormalities . . . consisting of problems in the pars interarticularis bilaterally, a collapsed disc space at L5-S1 with vacuum joint phenomena, and … a severe bulge of 4 mm"). Similarly, the ALJ concluded that Lankford's pain was "controlled" in August 2010 (AR 20, citing AR 353), without recognizing that Lankford was visiting his doctor to address chronic pain and medication management (AR 353); used Vicodin "about 4x daily" and Amitriptyline daily (AR 337); and that his medications, while "helping" the pain, had not "resolv[ed] the problem" (AR 337); *see also* AR 353 ("[N]orco is helping to manage back pain. No change in back pain since last visit. . . .  limited ROM, difficult changes in position, . . . Bulge visible in L lower lumber region tender to palpitation.  Pos tender to palpitation of R sciatic in buttocks and thigh"); AR 281 (methadone discussed as an option in 2009).  If the ALJ noted and rejected the medical opinions of Lankford's treaters, the ALJ was required to explain "why significant probative evidence [was] rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)) (internal citation omitted). The ALJ failed to make the "full and detailed findings of facts essential" to his conclusion. *Lewin*, 654 F.2d at 634-35.

      Second, the ALJ opined that Lankford's ability to independently perform some activities of daily living was "not inconsistent with a modified range of light work activities." AR 20 (citing AR 249). To support this conclusion, the ALJ cited the report of a consultative examiner who performed an orthopedic examination for the SSA stating that Lankford was able to bathe and clothe himself, occasionally helped his wife with the dishes, but could not do any other housework because of his condition. AR 249. During the hearing, Lankford testified that he could only stand for 10-15 minutes before his legs "burn so much that you've got to sit down." AR 61; *see also* AR 62 (will leave grocery store after 20 minutes because of leg pain; cannot stand in line very long so makes frequent trips to store and buy fewer items). He testified that he could sit for up to 20 minutes before he was so uncomfortable that he had to stand. AR 63, 68. It takes him approximately 10 minutes before his back is loosened up sufficiently to allow him to sit back down. AR 63-64. Lankford takes two to three hour naps twice a day. AR 70. The ALJ did

not take this testimony into account, and the activities of daily living that the ALJ relies upon are not a sufficient basis for rejecting Lankford's testimony. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (evidence that claimant could assist with household chores was not determinative of disability; a claimant need not "vegetate in a dark room excluded from all forms of human and social activity" to be unable to engage in substantial gainful activity); *see also Smolen*, 80 F.3d at 1284 n.7 ("many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication") (internal citation omitted).[5] This is all the more important because Lankford's testimony regarding his limitations is not contradicted by that of any treating physician.

If, on remand, the ALJ once more rejects Lankford's credibility, he must provide "clear and convincing" reasons for doing so. In particular, the ALJ must address all the significant probative evidence in the record, and explain why he rejects that evidence.

### C. On remand, the ALJ must address the arguments that Defendant implicitly conceded.

The ALJ stated in his decision that Lankford's Date Last Insured was July 30, 2009. AR 18. Lankford contends he was last insured on December 31, 2010. AR 146, 183. Defendant did not address Lankford's argument, apparently conceding the issue.

Lankford states that he filed a prior claim on January 3, 2006, and that this claim was denied on May 31, 2006. AR 149. As a result, Lankford contends that he can reopen the 2006 claim because he filed a new application within four years of the denial. *See* 20 C.F.R. § 404.988(b). The ALJ did not mention Lankford's prior claim. Defendant also fails to address this argument, again apparently conceding this issue. However, Lankford fails to address what "good cause" there is for reopening the claims. *See* 20 C.F.R. § 404.989 (prior claims will be reopened

---

[5] Similarly, the ALJ focused on Lankford's anticipated trip to Arkansas as evidence that his limitations were not as severe as Lankford alleged. AR 20. The record does not support this conclusion. Lankford testified that he stopped every hour on the drive to Arkansas because his back hurt ("it was burning, it was hurting, my legs") (AR 41-42), and that it took him almost a month to drive back to California (AR 42). The trip to Arkansas only supports a finding that Lankford is able to sit for an hour or so at a time, and must take frequent breaks; it does not support a finding that he can perform light work without accommodation.

for good cause, including where "(1) New and material evidence is furnished; (2) A clerical error in the computation or recomputation of benefits was made; or (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.") The ALJ must address these issues on remand.

## CONCLUSION

Based on the foregoing, the undersigned finds it appropriate to remand this case. The court has discretion to decide whether to remand for further proceedings or for an award of benefits. *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). A case should be remanded for an award of benefits "where there are no outstanding issues that must be resolved before a proper disability determination can be made." *Id*. (internal quotations and citation omitted). As discussed above, there are outstanding issues that must be resolved here, including the ALJ's evaluation of Lankford's degenerative disc disease and whether Lankford meets or equals Listing 1.04A; if necessary, the determination of Lankford's RFC; Lankford's last-insured date; and, whether there is good cause for reopening Lankford's earlier application for benefits. The undersigned therefore concludes that remand for an award of benefits would be inappropriate.

For the reasons stated above, the court grants in part Lankford's motion for summary judgment and remands the case for proceedings consistent with this order. The court denies Defendant's motion for summary judgment.

The clerk of the court is directed to close the file.

**IT IS SO ORDERED**.

Dated: January 31, 2013

Nandor J. Vadas
United States Magistrate Judge